IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TAMARAH CAUDILL,

     Plaintiff,

v.                                  No. 24-cv-939-WJ-KK

LEMBERG GROUP INC., and
KIM KONSTANTIN,

     Defendants.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR REMAND AND GRANTING DEFENDANTS' MOTION TO CONSOLIDATE**

THIS MATTER comes before the Court upon Plaintiff Tamarah Caudill's Motion for Remand **(Doc. 23)** (the Motion) and Defendants' Motion to Consolidate this case with related case number 1:25-cv-00806-GJF-SCY. **(Doc. 62)**. The Court first resolves the Motion for Remand before turning to the Motion to Consolidate.

**MOTION FOR REMAND (DOC. 23)**

Defendants Lemberg Group Inc. and Kim Konstantin remove this action initially filed in New Mexico state court to federal court based on diversity of citizenship, 28 U.S.C. §§ 1332, 1441. Ms. Caudill moves to remand to state court, asserting lack of diversity because, she contends, at the time of removal she was a Kansas citizen, as was her husband William Sloper, a defendant named in the complaint. Since the filing of the complaint, however, all claims against Mr. Sloper have been voluntarily dismissed, and he is no longer a party to this action.[1] **Doc. 45**.

---

[1] Former defendant CWX Transportation LLC was also voluntarily dismissed from the action. **Doc. 45.** Only Lemberg Group and Kim Konstantin remain defendants.

Upon thorough consideration of the record, the Court concludes the Motion is not well-taken. First, the evidence overwhelmingly supports Ms. Caudill was domiciled in Michigan and, therefore, complete diversity was present at the time of removal. Second, even if Ms. Caudill were domiciled in Kansas, Mr. Sloper's subsequent voluntary and final dismissal from the case cures any defect in complete diversity.

On March 19, 2026, the Court heard the parties' submissions concerning Ms. Caudill's citizenship. **Doc. 82**. Ms. Caudill testified at the hearing. As stated on the record at the hearing and articulated more fully below, the motion to remand to state court is DENIED.

## I.    Factual and Procedural Background

On November 26, 2023, Ms. Caudill rode as a passenger in a semi-truck driven by Mr. Sloper on I-40 in Bernalillo County, New Mexico, when that truck collided with a tractor-trailer driven by Kim Konstantin, who was allegedly driving significantly slower than the speed limit. Mr. Konstantin is a Nevada citizen and employee of Lemberg Group, Inc., an Illinois corporation.

Following the accident, Ms. Caudill suffered serious injuries requiring medical care. Ms. Caudill received treatment from a hospital and a skilled nursing facility in New Mexico. **Doc. 23 ¶¶ 7–8**. After being discharged from the nursing facility in or around late January 2024, *id.* ¶ 8, Ms. Caudill traveled to Kansas, where Mr. Sloper was recuperating from his injuries. Requiring continued medical attention and living assistance, Ms. Caudill ultimately returned to a house she owns in Michigan,[2] where family members lived and could help care for her. *Id.* ¶¶ 9–10.

On April 26, 2024, Ms. Caudill filed suit in the First Judicial District Court, County of Santa Fe, New Mexico, alleging negligence by Mr. Sloper, CWX, Kim Konstantin, and Lemberg Group. The complaint alleges Ms. Caudill is "a resident of / domiciled" in Kansas. **Doc. 1-1 ¶ 1**.

---

[2] Ms. Caudill describes the Michigan house as owned by both her and Mr. Sloper, though only Ms. Caudill's name is on the deed. **Doc. 23 ¶¶ 10–11**.

Some initial discovery disclosures, however, showed that Ms. Caudill was born and lived in Michigan and received and continued to receive medical care there. **Doc. 1 ¶ 18; Doc. 1-3 at 2**. When defense counsel deposed Ms. Caudill in May 2025, it became clear she was staying at her sister's home in Jackson, Michigan, following a roof collapse at her home in Elmira, Michigan. Preliminary discovery also revealed a copy of Ms. Caudill's driver's license identifying the Elmira address and medical records and bills tied to that address. **Docs. 1-5; 1-7; 1-8; 1-9; 1-10**. Other records produced by Ms. Caudill suggested that she received health insurance from the State of Michigan around the time she filed this lawsuit. **Doc. 1 ¶ 19; Docs. 1-10, 1-11.**

Upon learning of Ms. Caudill's connections to Michigan, Defendants believed they had a good faith basis to assert complete diversity of citizenship among the parties, and on September 20, 2024, filed a Notice of Removal in this Court pursuant to 28 U.S.C. § 1446. **Doc. 1 ¶ 20**. Ms. Caudill does not object to the timeliness or any other procedural aspect of removal. Ms. Caudill's sole challenge is to diversity of citizenship, as required for federal jurisdiction under 28 U.S.C. § 1332. **Mot. at 1, 3 ¶ 21.** Ms. Caudill asserts she was in fact a citizen of Kansas at the time the lawsuit was filed — same as Mr. Sloper — precluding complete diversity.

Mr. Sloper was dismissed from the action on May 21, 2025, pursuant to a joint stipulated Motion to Dismiss to which all parties consented. **Doc. 45**. There is no dispute that Mr. Sloper's dismissal rendered all parties to the action diverse. That said, given that for diversity purposes, domicile is fixed at the time of filing of a lawsuit, Ms. Caudill contends that her alleged Kansas citizenship at the outset created a jurisdictional defect that persists throughout the case and cannot be cured by the subsequent dismissal of the party defeating diversity. As explained below, the Court concludes that this proposition is inconsistent with Supreme Court precedent. In any event, even if it were correct, there would be no issue because complete diversity existed at the time of

3

removal.

## II.        Law Regarding Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  Removal is proper where there is complete diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional amount of $75,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(a), 1446(c).  The removing defendant bears the burden of establishing each jurisdictional element by a preponderance of the evidence.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

As a matter of general principle, the district court's jurisdiction is based on "the state of facts that existed at the time of filing."  *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S.----, 146 S.Ct. 724, 730 (2026) (quoting *Grupo Dataflux v. Atlas Global Grp., L. P.*, 541 U.S. 567, 571 (2004)).  Therefore, the elements of § 1332, including diversity of citizenship, are assessed at the time of removal.  *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam).

Typically, a defendant has 30 days from service of the complaint to seek removal.  28 U.S.C. § 1446(b)(1).  "In a case not originally removable," however, "a defendant who receives a pleading or other paper indicating the post-commencement satisfaction of federal jurisdictional requirements—for example, by reason of the dismissal of a nondiverse party—may remove the case to federal court within 30 days of receiving such information."  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996) (citing § 1446 (b)).  No diversity case may be removed "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith

in order to prevent a defendant from removing the action." § 1446(c).

Complete diversity exists where no plaintiff and no defendant are citizens of the same state. *Middleton*, 749 F.3d at 1200 (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). An individual is a citizen of the state in which she is domiciled. "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.*

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome. *See Baby C. v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005) (citing *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995)). "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005) (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *United States ex rel. King v. Hillcrest Health Ctr.*, 264 F.3d 1271, 1280 (10th Cir. 2001)). "[A]ll doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

### III.     A Preponderance of the Evidence Establishes that Plaintiff Was a Citizen of Michigan at the Time of Removal.

No party disputes that the amount in controversy exceeds $75,000. Therefore, federal jurisdiction under 28 U.S.C. § 1332 is satisfied if there is diversity of citizenship between Plaintiff and Defendants at the time of removal. Thus, this crucial question depends on whether Ms. Caudill was a citizen of Kansas, as the complaint alleges, or was a citizen of Michigan. The weight of the evidence establishes that Ms. Caudill was a Michigan citizen.

Domicile lies in the state where a person resides and intends to remain indefinitely. *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006). In evaluating domicile, a court reviews the totality of the evidence and may consider "objective indicia of intent," *Stucky ex rel. Stucky v.*

5

*Bates*, 2 F. Supp. 2d 1434, 1437 (D. Kan. 1998), such as "current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes," along with "other aspects of human life and activity." *Middleton*, 749 F.3d at 1201 (citing Charles A. Wright, et al., *Federal Practice and Procedure* § 3612, at 536–41 (3d ed. 2009)). Though not incorporated in the *Middleton* court's non-exhaustive list, where a person regularly receives medical care as a result of serious and ongoing health issues constitutes another "aspect of human life and activity" that may be considered in determining domicile.

It is undisputed that following her discharge from the New Mexico nursing facility, Ms. Caudill made a stop in Kansas before returning to Michigan around February or March 2024. There is also no dispute that Ms. Caudill was staying in Michigan when she filed the state court action in April 2024. **Doc. 23-1 at 2**.

Ms. Caudill claims her stay in Michigan was intended to be temporary, but the evidence suggests otherwise. Discharge papers from late January 2024 provide that Ms. Caudill "stated that she was to be discharged following Sunday (1/28) morning and was going to Kansas to stay with partner Bill" and "that she was going to be in Kansas for 3-4 weeks before transferring *back home to Michigan*." **Doc. 1-9** (emphasis added).

Other evidence undercuts Ms. Caudill's description of her stay in Michigan as transitory. First, Ms. Caudill was born in Michigan and issued a Michigan driver's license as recently as June 2023, **Doc. 1-5**, and her phone number has a Michigan area code. **Tr. 41:18–22**.[3] Ms. Caudill has family

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

in Michigan, including relatives who cared for her after the accident (for which she still requires medical attention).  Ms. Caudill herself owns a home in the State of Michigan where she stayed until structural issues required her to relocate to the home of her sister who also lives in Michigan. **Doc. 23-1 at 2**.

Most persuasive is the evidence demonstrating Ms. Caudill received medical and disability benefits from the State of Michigan during the relevant time period.  Medical records submitted by Defendants indicate that certain medical treatments Ms. Caudill underwent in May 2024, were billed to "Meridian HMP," aka "Healthy Michigan Plan," a Michigan health insurance plan.  **Docs. 1-10, 1-11**.  Ordinarily, one needs to establish residency in a state to be eligible for Medicaid coverage through that state.  The Court's research indicates that Michigan imposes no different requirement.  *See, e.g.*, Healthy Michigan Plan, Mid-Michigan District Health Department, https://www.mmdhd.org/healthy-mi/ (last accessed Apr. 15, 2026) ("The Healthy Michigan Plan provides health care coverage for individuals who," *inter alia*, "are residents of the State of Michigan.").  The medical treatments included in the record are dated May 3, and May 6, 2024, and Plaintiff provides no evidence indicating that those benefits started after she filed suit.  Nor does the record show that Ms. Caudill's benefits from either program have terminated.

Finally, Ms. Caudill's testimony confirms that she receives disability payments from the State of Michigan.  **Tr. 41:5–17**. As a matter of policy, Michigan provides public assistance only to residents of Michigan.  *See Soto v. Dir. of Mich. Dep't of Social Servs.*, 251 N.W.2d 292, 297 (Mich. Ct. App. 1977).  Ms. Caudill herself acknowledged this requirement at the hearing.  ***See* Tr. 41:15–17** ("Q. Are you aware that in order to receive [Michigan] disability pay you have to be a resident of Michigan? A. Yes.").  For purposes of disability assistance, a Michigan resident is "a person who is living in this state voluntarily with the intention of making his or her home in this state and

7

not for a temporary purpose and who is not receiving assistance from another state." Mich. Admin. Code R. § 400.3175. Therefore, as a matter of Michigan state law, to receive disability payments, Ms. Caudill cannot be receiving similar assistance from Kansas, and she must be living in Michigan with the intention to reside there indefinitely. In other words, in order to receive disability payments from Michigan, Ms. Caudill must be domiciled there.

Although it is not clear on what date the disability payments commenced, Ms. Caudill's testimony indicates it was not long after the accident.[4] Ms. Caudill's participation in Michigan's Medicaid and disability programs is an objective indicium of Ms. Caudill's residence and intent to remain in Michigan. If Ms. Caudill was only a temporary visitor to the state as she contends, she would be ineligible for these benefits — benefits she acknowledges are available only to Michigan residents.

Ms. Caudill also testified that no medical provider she saw in the five years preceding the accident was located in Kansas. **Tr. 38:24–39:5**. In addition to her injuries from the accident, Ms. Caudill requires ongoing medical treatment for COPD, a chronic health condition. Ms. Caudill explained, "once you have a doctor for that, you see that doctor." **Tr. 39:5–6**. The record suggests that doctor is based in Michigan, along with Ms. Caudill's other doctors. ***Id.***; ***see also id.*** **at 27:20–21**. Ms. Caudill's testimony shows she has appointments scheduled with these Michigan-based doctors in May. **Tr. 40:19–41:3**. Although Ms. Caudill states that she "ha[s] a doctor in Kansas" and had a short hospital stay in Kansas in December 2025 during the Christmas holidays, these facts are outweighed by the bulk of the evidence, which establishes that Ms. Caudill's medical providers from the time of the accident are located in Michigan. **Docs. 1-10, 1-11; Tr. 27:20–21.**

---

[4] No documentary evidence of Plaintiff's tax returns listing Plaintiff's Kansas address have been provided; therefore, it is not clear in which years Plaintiff claimed Kansas as her residence. For purposes of analysis, the Court assumes that Plaintiff is not dishonestly representing her Michigan residency for purposes of the receipt of state benefits.

Ms. Caudill's presence in Kansas in December 2025 appears attributed to her practice of spending holidays with Mr. Sloper, not an extended period of residence. *See* **Tr. 46:18-19**.

Ms. Caudill presents no documentary evidence to corroborate her residency in Kansas, relying instead on a sworn declaration asserting that she has ties to the state. **Doc. 23-1**. Her declaration relies heavily on her professed intent to return to her "home" in Kansas. But the Tenth Circuit has rejected the notion that subjective intent is sufficient to establish citizenship. *See Walden v. Broce Const. Co.*, 357 F.2d 242, 245 (10th Cir. 1966) ("Mere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says.").

Beyond her assertions of subjective intent, Plaintiff identifies several objective indicia of domicile. Ms. Caudill states that she and Mr. Sloper moved into a home in Kansas when they married in 2015. **Doc. 23-1 at 1**. The record suggests that the home remains in the couple's possession and that Ms. Caudill keeps furniture and "household items" there. *Id.* **at 2**. Ms. Caudill asserts that she generally spends winters in Kansas and summers in Michigan, **Tr. 46:14–15**, though the record does not substantiate Ms. Caudill's living patterns or describe them with particularity. Ms. Caudill maintains joint bank accounts with Mr. Sloper and automobile insurance in Kansas. **Doc. 23-1 at 2.** She also represents that she files and pays Kansas state income tax. *Id.*

To be sure, Ms. Caudill's ownership of real property and payment of income tax in Kansas show some presence in the state. Moreover, keeping furniture and other personal items in the Kansas home arguably undercuts an intention to sell it imminently. On balance, however, these elements of the record support that Ms. Caudill has historically lived in Kansas for periods of time. They do not establish that she resided there at the time she filed this lawsuit. Leaving furniture in

a home may indicate an intent to retain possession, but it does not establish residence or an intent to return imminently.  This Court has previously rejected similar arguments.  *Sanchez v. Sentinel Ins. Co., Ltd.*, No. 15-CV-00345-WJ-KK, 2015 WL 13376732, at *3 (D.N.M. June 29, 2015).

Ms. Caudill's history of residing in or periodically visiting Kansas is insufficient to negate the evidence demonstrating that she resided in Michigan at the time she filed the lawsuit and intended to stay there.  A seasonal residence or a place where one spends some time does not constitute one's domicile for purposes of diversity jurisdiction.  Tellingly, as of March 2026, Ms. Caudill still had not returned to Kansas but rather relocated to Arizona.  **Tr. 52:21–22**.  When viewed against the countervailing evidence supporting her Michigan residence, Ms. Caudill's maintenance of real property and financial assets in Kansas does little to move the needle.[5]  Further, although Ms. Caudill offers her tax returns claiming Kansas residency in support of remand, in light of Ms. Caudill's receipt of assistance from the State of Michigan, that assertion troubles the Court rather than persuades it to rule in Ms. Caudill's favor.

The substantial weight of the evidence establishes that Ms. Caudill in fact resided in and intended to remain in Michigan at the time of removal.  Thus, Defendants have met their burden to demonstrate diversity of citizenship.

**IV.    Even if Ms. Caudill Were a Citizen of Kansas at the Time of Removal, Mr. Sloper's Subsequent Voluntary Dismissal from the Action Cures any Statutory Defect in Removal.**

As established above, the record demonstrates that Ms. Caudill was more likely than not a citizen of Michigan and thus, diversity was complete at the time of removal.  Given there is no dispute that the monetary amount at issue exceeds the jurisdictional threshold, this Court's

---

[5] While Plaintiff asserts she has "bank accounts in Kansas," as this Court has previously stated, "this fact holds little significance in our globalized age, where individuals can easily hold accounts with banks that are physically based in other states or that maintain no physical locations at all."  *Sanchez*, 2015 WL 13376732, at *3.

jurisdiction under 28 U.S.C. § 1332 is established. Nonetheless, there is a second basis on which the Motion must be denied. Even if one could somehow reach an opposite conclusion about the weight of the evidence, federal jurisdiction would still be proper because the parties became completely diverse upon Sloper's dismissal from the case. Thus, there is no question that, sitting today, this Court possesses subject matter jurisdiction over the action.

The Supreme Court recognizes a limited exception to the "time-of-filing" rule, permitting a federal court exercising diversity jurisdiction to proceed to judgment where a jurisdictional defect existing at removal is later cured. This exception rests on the following rationale. The removal statute "require[s] that the case be fit for federal adjudication at the time the removal petition is filed." *Caterpillar*, 519 U.S. at 63 (citing § 1441(a)). Therefore, absent complete diversity, removal is statutorily defective. But, when the "jurisdiction spoilers" fall away prior to judgment, rendering the parties completely diverse, the defect in the court's jurisdiction is remedied and dismissal is no longer required. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. at 572, 580; *see also Stokes v. Echo Global Logistics, Inc.*, No. 25-cv-00550-WJ-GBW, 2026 WL 867889, at *2 (D.N.M. Mar. 30, 2026) ("[T]he Supreme Court has recognized that voluntary changes in the parties and claims effectively reconfigure the lawsuit and may bring the suit newly within or newly outside a federal court's jurisdiction.") (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005)); *Royal Canin, Inc. v. Wulllschleger*, 604 U.S. 22, 39 (2025)). In other words, the "proper[] and final[]" cure of a jurisdictional defect, "excus[es] noncompliance with the removal statute's requirement of complete diversity at the time of removal." *Hain Celestial Grp., Inc.*, 607 U.S. ----, 146 S.Ct. at 732.

Considerations of judicial waste have factored into the Supreme Court's decisions to overlook pre-judgment jurisdictional defects and affirm judgment. In *Caterpillar*, for example, the Court

11

reversed the Circuit Court's dismissal of a jury verdict following a six-day trial due to a jurisdictional defect then-cured, reasoning that once the case had been tried in federal court "with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), considerations of finality, efficiency, and economy become overwhelming." 519 U.S. at 75.  Requiring remand in this instance would not result in waste of the same magnitude.  But it would nonetheless set in motion a purely formal sequence: the case would be returned to state court only for Defendants to file a second notice of removal once complete diversity existed.  Although that opportunity has since lapsed under § 1446(c), the relevant point is that, at the time the defect was cured, remand would have served only to trigger a duplicative removal process with no effect on the Court's jurisdiction.

Because orders denying remand are not final and, therefore, not appealable as a matter of right, the Supreme Court's opinions addressing this issue have arisen when cases are substantially further along.[6]  Nonetheless, this Court believes the Court would sanction the same result here. Ultimately, the Supreme Court's precedent makes clear that Mr. Sloper's final and voluntary dismissal from the case, resulting in complete diversity, cured any jurisdictional defect requiring remand.  Thus, even assuming the removal was defective, this Court declines to order remand where the defect was cured within the removal period and remand would be futile.

## MOTION TO CONSOLIDATE (Doc. 62)

Defendants seek to consolidate this case with a case filed by Mr. Sloper in this District, *Sloper v. Lemberg Group, Inc.*, Case No. 1:25-cv-00806-GJF-SCY, arising out of the same accident.  **Doc. 62**.  As the Court understands the situation, Mr. Sloper has not taken a position on

---

[6] In *Caterpillar*, 519 U.S. at 66–67, and *Hain*, 607 U.S. ----, 146 S. Ct. at 729, the cases had proceeded to final judgment after trial.

the motion. *Id.* **at 10.** Ms. Caudill filed a brief in opposition, asserting that any ruling on consolidation should be deferred until the Court resolves the motion to remand. **Doc. 66**. The motion to remand has now been decided, and the motion to consolidate is ripe for decision.

Federal Rule of Civil Procedure 42(a) permits the district court, in its sound discretion, to consolidate actions that involve "a common question of law or fact." Fed. R. Civ. P. 42(a)(2); *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978). Among other factors, in evaluating whether consolidation is appropriate, the court considers: "(1) whether the cases involve substantially the same parties or property; (2) whether the cases call for a determination of the same or substantially related questions of law and fact; and (3) whether the cases would entail substantial duplication of labor or unnecessary court costs or delay" if maintained in separate actions. *See Flinders v. DCFS*, No. 23-cv-174, 2023 WL 8238891, at *1 (D. Utah Nov. 28, 2023) (quotation marks and citation omitted). Another consideration is whether maintaining separate actions would risk inconsistent results. *Sikora v. CBM Partners Corp.*, No. 13-cv-195 WJ-RHS, 2013 WL 12155227, at *1 (D.N.M. June 3, 2013). "In weighing the interests of convenience and economy against an ultimate goal of fairness and impartiality at trial, as well as individual justice . . . fairness [is] paramount." *Pruit v. Levy*, No. 20-cv-467-WJ-SCY, 2023 WL 5486305, at *1 (D.N.M. Aug. 24, 2023) (Johnson, C.J.). Consolidation should not be granted at the expense of justice. *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).

In this case, consolidation is warranted because the actions involve identical parties, arise from the same underlying events, and present substantially similar legal issues. Defendants correctly note that the two cases flow from the same motor vehicle accident, and Mr. Sloper and Ms. Caudill were in the same vehicle. Among other similarities, both plaintiffs claim that defendant Konstantin was negligent and negligent per se. **Doc. 1-1 ¶¶ 19–21; Doc. 62-1 ¶¶ 15–**

**24**. Both plaintiffs also assert that Lemberg Group was negligent in hiring and supervising defendant Konstantin and should be held vicariously liable under a respondeat superior theory. **Doc. 1-1 ¶¶ 27, 30[7]; Doc. 62-1, ¶¶ 46, 48**.

Consolidation would also promote efficiency and fairness. First, combining all interested parties in one case will facilitate meaningful settlement discussions. Second, because no party resides in New Mexico, should the case proceed to trial, a single proceeding would spare out-of-state witnesses the burden of traveling more than once. Third, given the likelihood of comparative fault issues, proceeding separately would risk inconsistent determinations and increased prejudice through separate trials and jury verdicts. Last, the Court notes that no diversity issue arises from consolidation because, even if Ms. Caudill were, for some reason, in fact a Kansas citizen, to borrow a phrase from many a first-year law school civil procedure course: Ms. Caudill and Mr. Sloper would be on the "same side of the v."

The Court therefore concludes that the efficiency and fairness promoted by consolidation outweighs any risk of prejudice and grants Defendants' motion to consolidate.

### **ORDER**

**IT IS ORDERED** that Plaintiff's Motion for Remand **(Doc. 23)** is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion to Consolidate **(Doc. 62)** is GRANTED. This case shall be CONSOLIDATED with case number 25-cv-00806-GJF-SCY, with case number 24-cv-00939-WJ-KK serving as the lead case. The parties must file all future pleadings and other papers in these consolidated actions in case number 24-cv-939-WJ-KK.

---

[7] The relevant paragraph is numbered 39 but in fact follows paragraph 29. The cited paragraph reads: "Defendant Konstantin was acting in the course and scope of his employment with Defendant Lemberg Group at the time of the crash, so both are responsible for his actions or omissions."

/s/

WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE